IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSANDRA JEAN BRUCE,

    Plaintiff,

v

MICHIGAN DEPARTMENT OF
CORRECTIONS, a public entity,
DANIEL H. HEYNS, in his official
capacity as Director of the Michigan
Department of Corrections,
MILLICENT WARREN, in her official
capacity as former Warden of the Huron
Valley Correctional Facility,
JOANN KOCISKY, MS. DICK, MR. BURNETT,
RUO COOK, ARUS PERRY,
UNNAMED EMPLOYEES OF HURON VALLEY
CORRECTIONAL FACILITY, and
UNNAMED EMPLOYEES OF HURON VALLEY
CORRECTIONAL FACILITY'S HEALTHCARE
AND OPTOMETRY DEPARTMENTS, each
and all in their official and individual capacities,

    Defendants.
_____/

Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
363 West Big Beaver Road, Suite 215
Troy, MI 48083
Tel:  (248) 457-6005
Fax:  (248) 689-3268
terigorman@aol.com
_____/

# COMPLAINT

    Plaintiff, CASSANDRA JEAN BRUCE, by and through her attorneys, Teresa J. Gorman PLLC, for Her Complaint, states as follows:

1

**JURISDICTION AND PARTIES**

1. This is an action by Plaintiff to enforce her civil rights protected by the Eighth and Fourteenth Amendments to the Constitution of the United States as well as the Americans With Disabilities Act, as amended, 42 USC §12101, et seq.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. §1983, 42 U.S.C. §1988, and 42 USC §12101, et seq.

3. Plaintiff is a resident of the City of Flint, Genesee County, Michigan.

4. During the relevant time, Plaintiff was imprisoned in the Huron Valley Correctional Facility under the jurisdiction of the Michigan Department of Corrections.

5. Plaintiff was released from prison on April 1, 2014 and this action is brought pursuant to MCLA §600.5851(1).

6. Defendant Michigan Department of Corrections ("MDOC") was and is a "state or local government" within the meaning of the Americans with Disabilities Act, as amended, and as such operated the Huron Valley Correctional Facility ("Huron Valley") in the City of Ypsilanti, County of Washtenaw, Michigan where it was and is responsible for the care and custody of prisoners incarcerated in the State of Michigan.

7. Defendant Daniel H. Heyns was and is the Director of Defendant Michigan Department of Corrections. His duties and responsibilities include a responsibility for developing and implementing policies and procedures for the operation and management of the Michigan Department of Civil Rights and its employees. He is responsible for the care, custody and protection of prisoners under the jurisdiction of the Michigan Department of Corrections. Defendant Daniel H. Heyns was acting under the color of law of the State of Michigan and is sued in his official and individual capacity.

8. Defendant Millicent Warren was the Warden of Huron Valley during the relevant time period. Her responsibilities and duties included the training, assignment, supervision, discipline and investigation of correctional officers and MDOC employees at Huron Valley. She was responsible for the unlawful treatment to which Plaintiff was subjected. Defendant was acting under the color of law of the State of Michigan and is sued in her official and individual capacity.

9. Upon information and belief, Defendant JoAnn Kocisky was Defendant MDOC's off-site medical coordinator at Huron Valley. Defendant was acting under the color of law of the State of Michigan and is sued in her official and individual capacity.

10. Upon information and belief, Defendant Ms. Dick was Defendant MDOC's principal of education at Huron Valley. Defendant was acting under the color of law of the State of Michigan and is sued in her official and individual capacity.

11. Upon information and belief, Defendant Mr. Burnett was Defendant MDOC's building trades instructor at Huron Valley. Defendant was acting under the color of law of the State of Michigan and is sued in his official and individual capacity.

12. Upon information and belief, Defendant RUO Cook was Defendant MDOC's Resident Unit Officer at Huron Valley. Defendant was acting under the color of law of the State of Michigan and is sued in her official and individual capacity.

13. Upon information and belief, Defendant ARUS Perry was Defendant MDOC's Assistant Resident Unit Supervisor at Huron Valley. Defendant was acting under the color of law of the State of Michigan and is sued in her official and individual capacity.

14. Unnamed Defendants are MDOC employees employed at Huron Valley who were acting under color of law of the State of Michigan and are sued in their official and individual capacities.

15. Unnamed Defendants are MDOC employees employed at Huron Valley's Healthcare and Optometric Departments who were acting under color of law of the State of Michigan and are sued in their official and individual capacities.

16. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 which authorizes Federal courts to decide cases concerning federal questions, and 28 U.S.C. § 1343(a)(3) and (4) which authorizes Federal courts to hear civil rights cases. This Court has personal jurisdiction over the Defendants named herein as public officials of the State of Michigan sued in their official and individual capacities for violations of Plaintiffs' statutory and constitutional rights. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars.

17. Venue is proper in this court as Defendants conduct their business in the County of Washtenaw in the Eastern District of Michigan and the named Plaintiff was incarcerated in the Eastern District of Michigan during the relevant time periods

### **GENERAL ALLEGATIONS**

18. Plaintiff repeats and realleges paragraphs 1-17

19. In 2004, Plaintiff was sentenced to serve time in prison. From the time of her sentencing until her parole on April 1, 2014, Plaintiff was placed under the custody and control of the Michigan Department of Corrections.

20. Plaintiff's date of birth is July 8, 1971.

21. In early 2007, Plaintiff had been taking education classes in the prison's building trades department and also working in a porter position cleaning showers.

22. On or about February 2, 2007, Plaintiff, then 35 years old, awoke with extremely blurred vision in both eyes.

23. Due to the blurred vision, Plaintiff transmitted an internal message (a "kite") requesting immediate medical attention.

24. Plaintiff's request for immediately medical attention regarding her blurred vision was denied and Huron Valley healthcare officials responded that she had to wait for her regular 2 year check up to address the complaint of blurred vision.

25. Plaintiff grieved the healthcare response but her grievance was denied.

26. Over two months later, on or about April 4, 2007, Plaintiff underwent an optometric vision screening examination which resulted in a diagnosis of cataracts in both eyes. She was referred to an outside physician, Dr. Lavery of TLC Eyecare and Laser Centers.

27. For the ensuing months, Plaintiff continued to file numerous medical request kites requesting that the referral be fulfilled and she be allowed to consult with Dr. Lavery.

28. Over three months later, on or about July 24, 2007, Plaintiff underwent another optometric vision screening examination which resulted in a finding that her cataracts were getting worse and her vision was becoming greatly impaired. The examining physician expressed surprise that she had not had the cataracts removed yet and referred her again to Dr. Lavery.

29. Plaintiff continued to file medical request kites requesting that the referral be fulfilled and she be allowed to consult with Dr. Lavery regarding her worsening eye sight.

30. On or about August 7, 2007, Plaintiff filed a grievance against the healthcare optometry department due to their deliberate indifference to the fact that she was going blind as a result of the cataracts.

31. On or about August 21, 2007, Plaintiff was finally examined by Dr. Lavery of TLC. He diagnosed significant cataracts and permanent eyesight deficiencies. He recommended surgery.

32. On or about September 20, 2007, Plaintiff file another grievance alleging that members of Huron Valley's healthcare department had falsely reported to the physician in optometric vision care, Plaintiff's instructor in building trades, and Plaintiff's unit officer that Plaintiff's cataracts had been removed when they indeed had not been and she was going blind.

33. By September 2007, Plaintiff could no longer see well enough to continue her educational classes in the prison's building trades department because she could not see to hammer, nail, drill, use a nail gun, saw, read blueprints, read a tape measure, or read examination questions.

34. On or about October 8, 2007, Plaintiff complained in writing that Plaintiff's vocational instructor, Mr. Burnett, had completed an internal form placing her on "regular" unemployable status instead of "medical" unemployable status which resulted in her being confined to her cell as punishment and also resulted in her losing her porter position.

35. By November 2007, Plaintiff still had not undergone cataract removal surgery.

36. On or about November 14, 2007, Plaintiff filed another grievance against Principal Dick and Building Trades Instructor Burnett for placing her on "regular" unemployable status instead of "medical" unemployable status despite their awareness that Plaintiff had a medical disability and could not see.

37. The designation of "regular" unemployable status resulted in Plaintiff being punished and penalized for having a medical disability whereby she was confined to her cell each day, not allowed to perform her porter duties, denied bathroom privileges, denied water, denied holiday privileges, and harassed by unit officers, including but not limited to Defendants Cook and Perry, due to her disability.

38. Plaintiff's request for accommodation of her disability which required having her status be modified from regular unemployable to medical unemployment was denied.

39. In the fall of 2007, Plaintiff and her cell mate requested that Defendant MDOC assign Plaintiff's cell mate as Plaintiff's aide due to Plaintiff's blindness. Plaintiff's request for this accommodation of her disability was denied.

40. On or about November 15, 2007, Plaintiff filed another grievance regarding the treatment to which she was being subjected by unit officers due to her disability and the confinement to her cell that resulted from the wrongful categorizing of regular unemployable status.

41. By December 2007, Plaintiff still had not undergone cataract removal surgery.

42. On or about December 18, 2007, Plaintiff filed yet another medical kite request stating that she could no longer see at all out of her left eye and her right eye was getting almost as bad.

43. By February 2008, Plaintiff still had not undergone cataract removal surgery.

44. On or about February 8, 2008, Plaintiff, now blind but for seeing "fog", filed yet another grievance against the healthcare personnel regarding the failure to schedule the cataract removal surgery.

45. By March 2008, Plaintiff still had not undergone cataract removal surgery and was now totally blind.

46. On or about March 21, 2008, Plaintiff consulted with Dr. Lavery again who noted her total blindness.

47. By April 2008, Defendants had demonstrated deliberate indifference to Plaintiff's serious medical needs for over 14 months.

48. On or about April 23, 2008, the cataract on Plaintiff's left eye was surgically removed.

49. On or about April 30, 2008, the cataract on Plaintiff's right eye was surgically removed.

50. Plaintiff suffered permanent damage to her eyes due to the delays in having the cataracts removed.

51. After her surgeries, Plaintiff filed additional grievances regarding the deliberate indifference to her serious medical needs.

52. Plaintiff was reluctant to file litigation against Defendants while she remained incarcerated for fear of further discrimination, harassment and retaliation.

53. Plaintiff was released from prison on April 1, 2014 and this litigation is filed within one year of that release pursuant to MCLA §600.5851(1)

## COUNT I
## CRUEL AND UNUSUAL PUNISHMENT
## IN VIOLATION OF THE EIGHTH AMENDMENT TO THE
## UNITED STATES CONSTITUTION
## (42 U.S.C. §1983)

54. Plaintiff repeats and realleges paragraphs 1-53

55. Conduct or acts perpetuated by government officials and agencies which deprive a citizen of rights, privileges, or immunities secured by the United States Constitution and Laws of the United States are actionable under Civil Rights Act of 1957, 42 U.S.C. § 1983.

56. Plaintiff's vision impairments constituted a serious a medical need.

57. Defendants' deliberate indifference to Plaintiff's medical needs constitutes an unnecessary and wanton infliction of pain and, therefore, is a violation of the Eighth Amendment.

58. Defendants' acts and omissions deprived Plaintiff of appropriate medical care. Defendants further exposed Plaintiff to unnecessary blindness, pain, physical injury, humiliation, embarrassment and a shameful state of helplessness.

59. Defendants' acts and omissions violated Plaintiff's rights under the Eighth Amendment of the United States Constitution to be free from such cruel and unusual punishment.

60. All of Defendants' acts and omissions constituted unnecessary and wanton infliction of pain and deliberate indifference to Plaintiff's medical needs and the risk that ignoring her disability and the requests for medical treatment would result in serious harm to Plaintiff.

61. Defendants acted in willful disregard and deliberate indifference of Plaintiff's rights and their conduct towards her was outrageous and reckless with no penological purpose.

62. As a result of Defendants' acts and omissions, Plaintiff experienced and continues to experience damage to her eyes, physical pain and suffering, and mental anguish.

## COUNT II
## DENIAL OF EQUAL PROTECTION
## IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE
## UNITED STATES CONSTITUTION
## (42 U.S.C. §1983)

63. Plaintiff repeats and realleges paragraphs 1-62

64. Defendants' failure to prevent and remedy the degrading treatment and cruel and unusual punishment violated Plaintiff's rights to equal protection under the Fourteenth Amendment of the United States Constitution.

65. All of Defendants' acts and omissions constituted unnecessary and wanton infliction of pain and deliberate indifference to Plaintiff's serious medical needs.

66. Defendants acted in willful disregard of Plaintiff's rights and their conduct towards her was outrageous and reckless with no penological purpose.

67. As a result of Defendants' acts and omissions, Plaintiff experienced and continues to experience damage to her eyes, physical pain and suffering, and mental anguish.

## COUNT III
## VIOLATIONS OF THE
## AMERICANS WITH DISABILITIES ACT
## (42 U.S.C. §12132)

68. Plaintiff repeats and realleges paragraphs 1-67

69. Defendants' conduct violated Plaintiff's rights pursuant to Title II of the Americans With Disabilities Act, 42 U.S.C. §12132.

70. All of Defendants' acts and omissions constituted unnecessary and wanton infliction of pain and deliberate indifference to Plaintiff's serious medical needs.

71. Defendants acted in willful disregard of Plaintiff's rights and their conduct towards her was outrageous and reckless with no penological purpose.

72. As a result of Defendants' acts and omissions, Plaintiff experienced and continues to experience damage to her eyes, physical pain and suffering, and mental anguish.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an award on her behalf against Defendants for:

A. compensatory damages;

B. punitive damages;

C. reasonable attorney fees under 42 U.S.C. §1988; and

D.   costs and expenses incurred in this action.

/Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
363 West Big Beaver Road, Suite 215
Troy, MI 48083
(248) 457-6005
terigorman@aol.com

## JURY DEMAND

Plaintiff demands a jury trial.

s/Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
363 West Big Beaver Road, Suite 215
Troy, MI 48083
(248) 457-6005
terigorman@aol.com